```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

PAULTRE DESIR and JEAN BONNE-ANNEE,    :

                    Plaintiffs,         :    **REPORT AND RECOMMENDATION**

        -against-                       :       06 Civ. 1109 (LAK)(KNF)

CONCOURSE REHABILITATION AND            :
NURSING CENTER, and ANA PEREZ,
                                        :
                    Defendants.
------------------------------------------------------------X
```

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE LEWIS A. KAPLAN, UNITED STATES DISTRICT JUDGE

## INTRODUCTION

Plaintiff Jean Bonne-Annee ("Bonne-Annee") brought this action for damages against his former employer, Concourse Rehabilitation and Nursing Center, Inc. ("Concourse"), and his former Concourse supervisor, Respiratory Therapy Department Director Ana Perez ("Perez") (collectively, "defendants"). Bonne-Annee's complaint alleges that in or about the months of May and June 2004, while employed by Concourse, he was subjected to a hostile work environment and, thereafter, was terminated wrongfully, in July 2004, due to his race and national origin, in violation of the Civil Rights Act of 1866, 42 U.S.C. §§ 1981, et seq., Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq., New York's Executive Law § 296 and New York City's Administrative Code §§ 8-107.1(a), et seq.[1] In addition, Bonne-Annee seeks damages from Perez,

---

[1]Although the plaintiff's administrative charge of discrimination was based on national origin only, his race-based claim of discrimination may be deemed administratively exhausted because the two claims are so closely related that they may be considered indistinguishable. See
(continued...)

1

under New York common law, for tortious interference with contractual relations. The defendants have moved for summary judgment, pursuant to Fed. R. Civ. P. 56; the plaintiff opposes the motion.

## BACKGROUND

Bonne-Annee is a black male of Haitian national origin. He was hired by Stuart Lava ("Lava") and Dov Lebovic ("Lebovic"), two Concourse managers, to work at Concourse, commencing in February 2004, as a per diem respiratory therapist. In that capacity, the plaintiff worked on an as-needed basis, without a written contract or an employment term of fixed duration. While employed by Concourse, Bonne-Anne also worked as a respiratory therapist at other New York-area health care providers.[2]

Bonne-Annee was often scheduled to work a 7:00 p.m. to 7:00 a.m. shift for Concourse.[3] The plaintiff recalls that sometimes no supervisor or co-worker would be present while he performed his work assignments. However, Bonne-Annee was not the only Concourse per diem respiratory therapist who was assigned to work the above-noted shift alone or unsupervised.

Perez is a Hispanic woman of Dominican descent. She was hired by Concourse as a respiratory therapist on or about May 1, 2004, and was named Respiratory Therapy Department director sometime prior to June 1, 2004. In her capacity as director, Perez prepared the June 2004

---

[1](...continued)
Deravin v. Kerik, 335 F.3d 195, 201-02 (2d Cir. 2003).

[2] During the relevant time period, Bonne-Annee was employed concurrently, as a respiratory therapist, by the following entities: Kings County Hospital; Ultracare Medical Agency; Cliffside Medical Center; and 7th Avenue Medical Staffing.

[3] Bonne-Annee was also scheduled to work day shifts in May and June 2004, albeit less frequently, and complained, apparently, that the day shifts were scheduled without first consulting him to determine his availability.

respiratory therapist work schedule, and before being named director, Perez had assisted Lebovic with preparing a portion of the May 2004 respiratory therapist work schedule.

According to the plaintiff, Perez abused her scheduling authority by reducing to zero the number of shifts he was scheduled to work after June 2004. Bonne-Annee maintains Perez did this because of a racial and national origin bias she had against him. Bonne-Annee recalls, and alleged in his administrative charge of discrimination, that when he and Perez first met, sometime in May 2004, she "inquired where [Bonne-Annee] was from and when [he] replied that [he] was from Haiti, [Perez] said that [she] did not [sic] to work with you people." In the complaint Bonne-Annee filed to commence this action, he alleged that, at their first meeting, Perez told him she "despised" Haitians. However, he now contends his counsel used the word "despised," when he prepared the complaint, and attributed that word to Perez, although Perez never uttered it during their first encounter. Bonne-Annee also alleges Perez made a similar disparaging statement to Paultre Desir ("Desir"), a former plaintiff in this action, who is also of Haitian national origin. According to Bonne-Anne, Perez remarked to Desir: "[O]h my God, you people again? I don't like you people I'm not luck[sic] with you people." No one witnessed the exchange Bonne-Anne alleges occurred between him and Perez. Moreover, despite the offensive nature of the statements the plaintiff alleges Perez made, Bonne-Annee testified at his deposition that he felt neither harassed nor intimidated while employed at Concourse.

Bonne-Annee maintains Perez uttered her offensive statement to him in May 2004. However, by June 2004, when Perez had assumed the respiratory therapist scheduling duties, the number of opportunities Bonne-Annee was offered to work at Concourse increased. In any event, according to Bonne-Annee, Perez's discriminatory animus toward him manifested itself in her decision to schedule him to work alone one night shift out of seven night shifts available in May

3

2004 and three night shifts out of 12 night shifts available in June 2004, and her failure to offer him any work in July 2004 or thereafter.  Bonne-Annee contends that working the night shift at Concourse was a "dreaded" assignment and, therefore, being assigned that task constitutes a hostile work environment.

The defendants deny that Perez's scheduling decisions were motivated by racial or national origin bias or animus.  They maintain that Concourse made a business decision to recruit more full-time respiratory therapists and to decrease its reliance on per diem respiratory therapists.  However, Perez testified at her deposition that by July 2004, she had hired 17 persons to work as respiratory therapists at Concourse, most of whom were per diem employees.  In addition, according to Perez, she received complaints from Bonne-Annee's co-workers that he was not completing his assignments timely, necessitating that they complete his work after his night shift ended.  Perez also recalled receiving patient complaints regarding Bonne-Annee's work performance.  However, the defendants have not identified any Concourse staff member or patient who complained about Bonne-Annee's work performance.  Furthermore, the defendants never prepared or provided to the plaintiff an evaluation of his work.  Moreover, Bonne-Annee continued to perform respiratory therapist work at another health care facility, also managed by Lava, during the same period that the defendants contend Bonne-Annee performed his work unsatisfactorily.  According to the defendants, after Perez discussed the complaints she had received about the plaintiff with Lebovic, and considered Concourse's decision to decrease its reliance on per diem respiratory therapists, she determined to cease scheduling Bonne-Annee to work at the Concourse.  Except for one instance, in July 2004, when Bonne-Annee was summoned to work by a Concourse nursing supervisor, Bonne-Annee did not perform any work for Concourse, after June 2004.

# DISCUSSION

*Summary Judgment*

Summary judgment may be granted in favor of the moving party "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998). When considering a motion for summary judgment, "[t]he court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in his favor." L.B. Foster Co. v. America Piles, Inc., 138 F.3d 81, 87 (2d Cir. 1998) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 [1986]).

The moving party bears the burden of showing that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552 (1986). Once the moving party has satisfied its burden, the non-moving party must come forth with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S. Ct. 2505, 2511 (1986).

In order to defeat a motion for summary judgment, the non-moving party cannot merely rely upon allegations contained in the pleadings that raise no more than "some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586, 106 S. Ct. at 1355. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247-48, 106 S. Ct. at 2510. The non-moving party must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." Id., at 256, 106 S. Ct at 2514. Summary judgment should only be granted if no rational

jury could find in favor of the non-moving party. See Heilweil v. Mount Sinai Hospital, 32 F.3d 718, 721 (2d Cir. 1994).

*Title VII Individual Liability*

"[I]ndividuals are not subject to liability under Title VII." Wrighten v. Glowski, 232 F.3d 119, 120 (2d Cir. 2000); Tomka v. Seiler Corp., 66 F.3d 1295, 1313 (2d Cir. 1995) ("individual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII"), abrogated on other grounds by Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 118 S. Ct. 2257 (1998). Consequently, Perez is entitled to summary judgment on the Title VII claim the plaintiff has made against her.

*Hostile Work Environment*

Section 1981 and Title VII provide vehicles through which a plaintiff may seek redress for a claim of discrimination based on a hostile work environment. See Lopez v. S.B. Thomas, Inc., 831 F.2d 1184, 1189 (2d Cir. 1987).[4] The same standard used to analyze section 1981 claims is applied to Title VII claims. See Whidbee v. Garzarelli Food Specialities, Inc., 223 F.3d 62, 69 (2d Cir. 2000)(citing Hardin v. S.C. Johnson & Son, Inc., 167 F.3d 340, 347 n.2 [7th Cir.] cert. denied, 528 U.S. 874, 120 S. Ct. 178 [1999]); Gad-Tadros v. Bessemer Venture Partners, 326 F. Supp. 2d 417, 424 (E.D.N.Y. 2004). Furthermore, New York courts examine claims under [New York Executive Law § 296 and New York City's Administrative Code §§ 8-101, et seq.] with the same analytical lens as corresponding Title VII-based claims." Patane v. Clark, 508 F.3d 106, 113

---

[4]Title VII bars race-based and national origin-based discrimination. Section 1981 bars race-based discrimination, but does not extend to discrimination based on national origin. Therefore, to the extent that Bonne-Annee's section 1981 claim rests on his national origin, it must be dismissed. See St. Francis College v. Al-Khazraji, 481 U.S. 604, 613, 107 S. Ct. 2022, 2028 (1987).

6

(2d Cir. 2007); Cruz v. Coach Stores, Inc., 202 F.3d 560, 565 n.1 (2d Cir. 2000); but see Ochei v. Coler/Goldwater Memorial Hospital, 450 F. Supp. 2d 275, 283 (S.D.N.Y. 2006)(indicating that in two recent instances New York trial courts have held that the municipal anti-discrimination law holds employers to a higher standard than do Title VII and the state Executive Law).

Claims of discrimination brought under Title VII are analyzed in accordance with the three-part evidentiary framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973). Under that framework, the plaintiff must present a prima facie case of discrimination. If the plaintiff meets this burden, a presumption of unlawful discrimination arises and the burden shifts to the defendant, who must adduce evidence that an adverse employment action was taken for a legitimate, non-discriminatory reason. If the defendant states such a reason, the presumption of discrimination falls out of the case and the plaintiff must prove, by a preponderance of the evidence, that the reason offered by the defendant was merely a pretext for discrimination. To do so, the plaintiff must show that the stated reason was false and that discrimination was the real reason for the employer's action. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507-20, 113 S. Ct. 2742, 2747-54 (1993); Cagle v. Unisys Corp., No. 99 Civ. 9575, 2003 WL 21939705, at *4 (S.D.N.Y. Aug. 13, 2003).

The burden of establishing a prima facie case is minimal. See Bickerstaff v. Vasser College, 196 F.3d 435, 446 (2d Cir. 1999). In order to establish a prima facie case of discrimination, Bonne-Annee must show that: (i) he was a member of a protected class; (ii) he qualified for the subject position; (iii) he suffered an adverse employment action; and (iv) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. See Lopez, 831 F.2d at 1188; Windham v. Time Warner, Inc., 275 F.3d 179, 187 (2d Cir. 2001).

It is uncontested that Bonne-Annee, a black man of Haitian national origin, is a member of a protected class, although a dispute does exist between the parties about whether Bonne-Annee was qualified for his position. The Court viewed the evidence in the light most favorable to the plaintiff and drew all reasonable inferences in his favor, as it must do when analyzing a Fed. R. Civ. P. 56 motion. The Court is persuaded that the failure of the defendants to identify a single person who complained about Bonne-Annee's work performance; in conjunction with their failure to conduct any evaluation of the plaintiff's work performance prior to deciding not to offer him work assignments at Concourse; and that Bonne-Annee continued to perform respiratory therapist work at a facility operated by one of the managers who hired him to work at Concourse; and was summoned to return to work at Concourse, by one of its nursing supervisors, after Perez determined not to schedule him for work, all militate against a conclusion that Bonne-Annee was not qualified for the position he held at Concourse. The Court finds further that Bonne-Annee suffered an adverse employment action when Perez ceased scheduling him to perform respiratory therapist work at Concourse. However, the defendants allege Bonne-Annee has not met his burden of presenting a prima facie case of hostile work environment discrimination because the statement he contends Perez made, upon meeting him, that she dislikes working with Haitian people, without more, does not establish the existence of a hostile work environment.

"In order to establish a claim of hostile work environment, a plaintiff must produce evidence that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Demoret v. Zegarelli, 451 F.3d 140, 149 (2d Cir. 2006) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S. Ct. 367, 370 [1993]). Generally, in order to be pervasive, the incidents must be "sufficiently continuous and concerted," and not

8

merely episodic. See id., at 149. A plaintiff has the burden of establishing that the work environment was objectively hostile and abusive, not just subjectively perceived as such. See Demoret, 451 F.3d at 149. Unless they are sufficiently severe to alter the terms and conditions of employment, isolated incidents usually do not rise to the level of a hostile work environment. See id. When analyzing a hostile work environment claim, a court considers factors such as: (a) the frequency of the discriminatory conduct; (b) the severity of the discriminatory conduct; (c) whether the conduct interferes unreasonably with an employee's work performance; and (d) the extent to which the conduct occurred because of the plaintiff's [protected characteristic(s)]. See id.

In the case at bar, the basis for Bonne-Annee's allegation that he was subjected to a hostile work environment is a lone statement he attributes to Perez, through which she declared her dislike of working with Haitians. However, to withstand summary judgment Bonne-Annee "must demonstrate either that [this] single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of h[is] working environment." Cruz, 202 F.3d at 570 (internal quotations omitted). This he has not done.

As noted earlier, Bonne-Annee testified at his deposition that he felt neither harassed nor intimidated while employed at Concourse. Therefore, it is reasonable to infer that the isolated remark he attributes to Perez was not of the extremely serious ilk needed to establish the existence of a hostile work environment. Moreover, the record is devoid of evidence that Bonne-Annee was subjected to a "steady barrage of opprobrious [discriminatory] comments." Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997)(citation omitted). Consequently, the Court finds that the plaintiff has not established a prima facie case of hostile work environment discrimination, and summary judgment for the defendants, on this claim, is warranted.

*Wrongful Termination*

Bonne-Annee has also alleged his employment with Concourse was terminated wrongfully, because of his race and national origin, in violation of the federal, state and municipal anti-discrimination laws discussed above. Specifically, Bonne-Annee contends Perez stopped scheduling him to work as a per diem respiratory therapist, after June 2004, because of her bias and animus toward Haitians.

Applying the three-part burden shifting framework set forth in McDonnell Douglas analyzed earlier in this writing, the Court finds that: (1) the plaintiff is a member of a protected class; (2) Bonne-Annee was qualified for the position he held at Concourse; and (3) he suffered an adverse employment action. Bonne-Anne maintains the adverse employment action, excluding him from the Concourse work schedule, came shortly after Perez told him she did not like working with Haitians. Thus, the adverse employment action occurred under circumstances that give rise to an inference of discrimination. See Patterson v. County of Oneida, N.Y., 375 F.3d 206, 221 (2d Cir. 2004). The plaintiff, having satisfied his minimal burden, see Bickerstaff, 196 F.3d at 446, made it incumbent on the defendants to articulate a legitimate non-discriminatory reason for ceasing to offer Bonne-Annee work assignments. For their part, the defendants contend they ceased scheduling Bonne-Annee to work at Concourse because they: (a) determined to hire full-time respiratory therapists and to reduce their reliance on a per diem respiratory therapist staff; and (b) received complaints about the plaintiff's work performance.

In response, Bonne-Annee alleges the defendants' stated reasons for ceasing to employ him are pretextual. In support of that contention Bonne-Annee relies upon Perez's deposition testimony. It demonstrates that, by July 2004, after Concourse's decision to reduce its reliance on

per diem respiratory therapists and to increase its hiring of full time respiratory therapists had been made, Perez hired 17 persons, most of whom were per diem respiratory therapists. In addition, the record also contains evidence showing that Concourse never prepared a job performance evaluation for Bonne-Annee, and could not identify anyone who complained about the quality of his work, which the defendants maintain was a primary factor in their decision to cease offering the plaintiff work assignments at Concourse. The absence from the record of identifiable complainants, and the fact that Lava, one of the persons who hired the plaintiff to work at Concourse, continued to employ him while Concourse alleges his work performance was poor, and Perez's decision to continue to hire a staff comprised mostly of per diem respiratory therapists, after Concourse alleges it determined to reduce its reliance on such employees, when considered together, make Concourse's allegations about Bonne-Annee's work performance suspect. In the circumstance of the case at bar, the Court finds that Bonne-Annee has presented a sufficient quantum of competent evidence to permit a rational factfinder to reasonably infer that: (a) the justifications offered by the defendants for their conduct were false; and (b) discrimination was the real reason for their conduct. As a result, summary judgment for the defendants, on the plaintiff's wrongful termination charge, is not appropriate.

*Tortious Interferences with Contractual Relations*

Bonne-Annee has asserted that Perez violated New York common law by tortiously interfering with his contractual relations with Concourse. Bonne-Annee is wrong. "Tortious interference with contract requires the existence of a valid contract between the plaintiff and a third party, defendant's knowledge of that contract, defendant's intentional procurement of the third party's breach of contract without justification, actual breach and damages." Vigoda v. DCA Productions Plus, Inc., 293 A.D.2d 265, 266, 741 N.Y.S.2d 20, 23 (App. Div. 1st Dept. 2002). The

11

cause of action must be premised on a written contract of employment for a fixed duration, which Bonnee-Annee did not have. See Kosson v. Algaze, 203 A.D.2d 112, 610 N.Y.S.2d 227, 228 (App. Div. 1st Dept 1994).

Bonne-Annee alleges, in his complaint, that he was an at-will employee of Concourse. As such, he cannot assert a cause of action for tortious interference with contractual relations. This is so because employment relationships that are terminable at will are classified as prospective contractual relations and, therefore, cannot support a claim for tortious interference with contractual relations. See Snyder v. Sony Music Entertainment, Inc., 252 A.D.2d 294, 299, 684 N.Y.S.2d 235, 239 (App. Div. 1st Dept. 1999). Moreover, as an agent of Concourse, Perez cannot be held liable for tortious interference with the plaintiff's contractual relations with Concourse, absent a showing that in declining to schedule him for work assignments, Perez was acting "outside the scope of [her] authority." Kosson, 203 A.D. 2d at 113, 610 N.Y.S.2d at 228-29. Evidence in the record elicited from Lebovic, at his deposition, makes clear that, as director of Concourse's Respiratory Department, Perez was authorized to determine whom to add to and drop from the respiratory therapist work assignment schedule. Inasmuch as Bonne-Annee was an at-will employee and has not demonstrated that Perez acted outside the scope of her authority when she created the relevant work assignment schedules, granting summary judgment to Perez, on Bonne-Annee's common law tortious interference with contractual relations cause of action, is warranted.

## RECOMMENDATION

For the reasons set forth above, the defendants' motion for summary judgment should be granted with respect to the plaintiff's hostile work environment claim of discrimination and his common law cause of action for tortious interference with contractual relations. In all other

respects, the defendants' motion for summary judgment should be denied.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have (10) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Lewis A. Kaplan, 500 Pearl Street, Room 1310, New York, New York, 10007, and to the chambers of the undersigned, 40 Centre Street, Room 540, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Kaplan. FAILURE TO FILE OBJECTIONS WITHIN TEN (10) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. See Thomas v. Arn, 474 U.S. 140, 470 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F. 3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 58-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, New York
February 28, 2008

Respectfully submitted,

*Kevin Nathaniel Fox*

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE